UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

USAA GENERAL INDEMNITY COMPANY,

    Plaintiff,

v.                                  Case No. 8:19-cv-944-T-33TGW

ARTHUR SNOW,
as Personal Representative
of the Estate of Hugh W. Snow,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Arthur Snow's Motion for Summary Judgment (Doc. # 34), filed on April 9, 2020, and Plaintiff USAA General Indemnity Company's Motion for Summary Judgment (Doc. # 36), filed on April 15, 2020. The parties have responded to each Motion (Doc. ## 37-38), and Snow has replied. (Doc. # 39). For the reasons that follow, the Motions are denied.

**I.   Background**

Hugh Snow purchased automobile insurance from USAA in November 2013. (Doc. # 1-2). The policy included "STACKED" per-person underinsured motorist ("UM") coverage of $100,000. (Id. at 2). The policy also included bodily injury ("BI") coverage of $100,000 per person. (Id.).

1

A few days after purchasing the policy, Hugh called USAA and spoke to an unidentified USAA agent. On November 27, 2013, the USAA agent entered a note in USAA's claim software allegedly summarizing the call:

> MBR CALLED RECEIVED AOPOL SAID PREMIUM WAS HIGHER THAN QUOTED—HE THOUGHT PREM WAS 838.37—ADVISED TO GET THE 838.37 PREM HE NEED TO SIGN AND RETURN THE FORMS TO HAVE LOWER UM COVERAGE AND NO-STACKING. ADVISED AS SOON AS WE RECEIVE THE RETURNED FORMS PREM WOULD GO DOWN TO THE 838.37.

(Doc. # 36-2 at 2). In short, Hugh complained that the premium on the policy was higher than he expected, and the agent informed Hugh that his premium would decrease if he executed and returned a UM selection/rejection form selecting lower UM limits and non-stacked coverage.

Subsequently, Hugh filled out a UM coverage selection form on November 27, 2013. (Doc. # 34 at 11). The form states: "To make a change to your current policy, you must check one of the following boxes." (Id.). This text is followed by a list of options with boxes beside them. (Id.). Despite the instruction to check only one box, Hugh marked two boxes. First, he marked the box stating, "I want the NON-STACKED form of UM Coverage at limits equal to my BI liability limits," which would be $100,000. (Id.). Second, he marked a box stating, "I want the NON-STACKED form of UM Coverage at

2

limits of $10,000 per person, $20,000 per accident, which are lower than my BI Liability limits." (Id.). The dollar amounts in the second box are hand-written. (Id.).

After receiving this form, USAA amended the policy in December 2013 to carry non-stacked UM coverage with $10,000/$20,000 limits and a lower premium than Hugh had originally owed — either $803.48 or $812.21. (Doc. # 1-5 at 3).

Each year for the next six years, USAA provided Hugh with his annual policy renewal documentation, which included new UM selection/rejection forms. (Doc. # 36-3). But Hugh never executed and returned to USAA another UM selection/rejection form. (Id.).

USAA renewed the policy annually six times through November 20, 2019 with the same $10,000/$20,000 UM limits that were first issued in the revised December 10, 2013 policy. (Id.). In every policy period but one, Hugh paid premiums in accordance with those limits throughout the remainder of his insurance with USAA. (Id.). The one exception is the policy period from November 20, 2014 to May 20, 2015, during which Hugh paid a slightly higher premium for UM coverage than the purported costs for $10,000/$20,000 non-

stacked UM coverage listed on that policy period's selection/rejection form. (Doc. # 36-3 at 26-31).

In February 2019, Hugh passed away as a result of a car accident. (Doc. # 1 at 4; Doc. # 34 at 9). Hugh's Estate, of which Arthur Snow is the personal representative, sent USAA a demand for the UM policy limits, which the Estate maintains should be $100,000. (Doc. # 1 at 4).

USAA initiated this action on April 19, 2019, seeking a declaratory judgment that the insurance policy "contains non-stacked uninsured motorist coverage limits of $10,000.00 per person and $20,000.00 per accident." (Doc. # 1 at 6). Snow filed an answer on August 7, 2019 (Doc. # 13), and then an amended answer on March 16, 2020. (Doc. # 33).

Each party now seeks entry of summary judgment in its favor. (Doc. ## 34, 36). The Motions are ripe for review.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude

4

a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to

5

be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538–39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984)("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is

6

entitled to judgment as a matter of law on facts that are not genuinely disputed . . . ." (quotation omitted)).

### III. Analysis

#### A. Snow's Motion

Snow argues that the UM selection form filled out by Hugh is ambiguous, and thus, the form should be read against the drafter, USAA. (Doc. # 34 at 5-7); see Roberts v. Fla. Lawyers Mut. Ins. Co., 839 So. 2d 843, 845 (Fla. 4th DCA 2003)("Any ambiguities in an insurance policy are to be interpreted liberally and in favor of the insured and strictly against the insurer."). The problem with this argument is that the form itself is not ambiguous. Rather, Hugh's marks on the form are what create confusion.

Contrary to Snow's contention, (Doc. # 34 at 6), State Farm Mutual Automobile Insurance Co. v. Parrish does not establish that the ambiguity Hugh created when he filled out the form should be read against USAA. 873 So. 2d 547 (Fla. 5th DCA 2004). Instead, Parrish held that an insurance application form was not ambiguous, rejecting the trial court's conclusion that a "check mark" on the form "create[d] an ambiguity." Id. at 549-50. Thus, while Snow contends that other language in Parrish suggests the ambiguity created by Hugh should be read against USAA (Doc. # 39 at 2-3), Snow has

7

not cited any case in which an ambiguity created by the insured's filling out a non-ambiguous form was actually interpreted against the insurance company.

In the absence of such case law, the Court is not convinced at this juncture that the form should, as a matter of law, be automatically interpreted as requiring the higher UM benefits. And USAA has presented evidence suggesting that Hugh intended to select the lower $10,000 UM benefits when he filled out the form.[1] Indeed, despite receiving notices every year about the lower $10,000 UM benefits USAA attributed to Hugh's policy, Hugh never filled out another UM selection

---

[1] While Snow argues that the UM selection/rejection form is ambiguous, he does not address whether that supposed ambiguity is patent or latent. This is an important issue, however, because parol evidence may only be considered in analyzing latent ambiguities. See Philadelphia Indem. Ins. Co. v. Stazac Mgmt., Inc., No. 3:16-cv-369-J-34MCR, 2018 WL 2445816, at *8-9 (M.D. Fla. May 31, 2018)("Florida law recognizes two types of ambiguities, latent and patent, which have different rules of construction. . . . Importantly, the interpretation of an insurance policy with a latent ambiguity requires the court to consider parol evidence and would preclude entry of summary judgment. A patent ambiguity, on the other hand, is one that 'appears on the face of the document and may not be resolved by the consideration of parol evidence.'" (citations omitted)). As neither party has addressed whether any ambiguity is patent or latent, the Court will not make that determination at this juncture. Instead, for the purposes of the motions for summary judgment only, the Court will assume that the form — if ambiguous — suffers from a latent ambiguity such that the Court may consider extrinsic evidence.

form to increase the UM benefits. This suggests that Hugh was satisfied with the lower UM coverage.

In short, a reasonable factfinder could conclude that Hugh intended to select the lower $10,000 UM coverage and erroneously marked the additional box for non-stacked UM coverage of $100,000. Accordingly, Snow's Motion is denied.

**B.    USAA's Motion**

USAA maintains that Hugh "made a knowing, informed UM selection and waived the right to a written rejection of higher UM limits equal to the Policy's BI limits" by "hand-writing a selection of $10,000/$20,000 limits on an executed UM form, and then receiving six years of UM coverage subject to those limits." (Doc. # 36 at 4).

Florida Statute § 627.727 "requires that all motor vehicle liability insurance policies that provide bodily liability coverage include uninsured motorist coverage." Parrish, 873 So. 2d at 549. "Under [S]ection 627.727(1), the amount of UM coverage is equal to the amount of bodily injury liability purchased by an insured, unless the insured rejects UM coverage or selects lower limits of UM coverage." Id. (citing Chmieloski v. Nat'l Union Fire Ins. Co., 563 So. 2d 164, 166 (Fla. 2d DCA 1990)). "An insured may reject such coverage in writing, and the insured's written rejection

9

constitutes a prima facie showing that uninsured motorist coverage does not apply." Id. Regarding the selection or rejection of UM coverage, Section 627.727(1) states:

> **The rejection or selection of lower limits shall be made on a form approved by the office.** The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." **If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.**

Fla. Stat. § 627.727(1)(emphasis added).

USAA does not appear to argue that it satisfied the requirements of Section 627.727(1). Failure to satisfy those requirements prevents USAA from availing itself of the conclusive presumption in its favor. However, the Court agrees with USAA that failure to satisfy Section 627.727(1)'s requirements does not preclude USAA from proving that Hugh did knowingly reject higher UM coverage. (Doc. # 36 at 9-11); see GEICO Indem. Co. v. Perez, 260 So. 3d 342, 352 (Fla. 3d DCA 2018)("Simply because GEICO was not entitled to a conclusive statutory presumption that Perez had rejected UM

coverage, however, did not preclude GEICO from otherwise proving that Perez knowingly rejected UM coverage when he procured the subject automobile policy.").

Still, "the burden of proof of the insured's knowing rejection of higher [UM] coverage limits is upon the insurance company." Auger v. State Farm Mut. Auto. Ins. Co., 516 So. 2d 1024, 1026 (Fla. 2nd DCA 1987); see also Popson v. 21st Century Centennial Ins. Co., No. 8:14-cv-1788-T-35MAP, 2015 WL 12838360, at *7 (M.D. Fla. Dec. 7, 2015)("Absent a written rejection by the Popsons or the statutory presumption, Defendant has the burden of establishing that the Popsons made an informed, knowing rejection of coverage.").

Here, there is no dispute that Hugh filled out the proper form. The issue is the manner in which Hugh filled out the form — marking two boxes when the form instructed him to check only one.

In analyzing whether Hugh knowingly waived higher UM coverage, Snow argues that the Court should not consider the phone call note filled out by USAA's agent because it is inadmissible hearsay. (Doc. # 38 at 4). True, "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012)(citation omitted).

11

"Nevertheless, 'a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.'" Id. at 1293-94 (citation omitted). "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." Id. at 1294. "The possibility that unknown witnesses will emerge to provide testimony on this point is insufficient to establish that the hearsay statement could be reduced to admissible evidence at trial." Id.

Here, USAA does not suggest that the employee who created the phone call note will testify at trial. Rather, USAA suggests that the phone call note is a business record, and thus an exception to the hearsay rule. (Doc. # 36 at 7). Snow strenuously objects, arguing that the note does not satisfy the business record exception. (Doc. # 38 at 4-6).

While the Court would require further briefing to determine whether the phone call note qualifies as a business record under the Federal Rules of Evidence, consideration of the note would not alter the Court's summary judgment ruling.

The Court finds that there is a genuine issue of material fact regarding the meaning of the form Hugh filled out. Even

12

assuming the note about the phone call is admissible, a reasonable factfinder could conclude that Hugh intended to mark only the option for UM limits equal to his BI limits — $100,000. That reasonable factfinder could think that Hugh initially handwrote the $10,000/$20,000 figure, changed his mind on the amount of coverage he wanted, but then forgot to remove the mark by the lower UM limits. Indeed, a factfinder could put little weight on the years of policy renewals, believing that Hugh simply did not review the renewals closely. In short, the question of Hugh's intent — and thus whether he knowingly and intentionally waived his rights to higher UM benefits — is a question of fact that must be resolved at trial.

Finally, USAA brings up the existence of a state court case brought by Snow against USAA for UM benefits. (Doc. # 36 at 11). Although "USAA recognizes that this Court does not have the power to dismiss the Estate's state court lawsuit," USAA nevertheless asks this Court to enter "a declaration that [the] Estate's UM benefits claim should have been brought as a compulsory counterclaim in this action, that the Estate's only relief to remedy that deficiency is in this declaratory judgment action, and that if this action proceeds to judgment

13

without interposition of the counterclaim, the counterclaim is barred in its entirety." (Id. at 12-13).

USAA asks too much. This Court will not enter a declaration opining on how this Court's rulings will affect the state court action. It is for the state court to determine whether the claim asserted there should have been brought as a compulsory counterclaim in this action and whether a judgment of this Court will be res judicata in that action.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Arthur Snow's Motion for Summary Judgment (Doc. # 34) is **DENIED.**

(2) Plaintiff USAA General Indemnity Company's Motion for Summary Judgment (Doc. # 36) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of May, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

14