```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION
```

USAA GENERAL INDEMNITY COMPANY,

    Plaintiff,

v.                                    Case No. 8:19-cv-944-T-33TGW

ARTHUR SNOW,
as Personal Representative
of the Estate of Hugh W. Snow,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Arthur Snow's Amended Motion in Limine (Doc. # 48), filed on July 14, 2020. Plaintiff USAA General Indemnity Company responded on July 27, 2020. (Doc. # 50). For the reasons that follow, the Motion is denied.

**I.  Background**

Hugh Snow ("Hugh") purchased automobile insurance from USAA in November 2013. (Doc. # 1-2). The policy included "STACKED" per-person underinsured motorist ("UM") coverage of $100,000. (Id. at 2). The policy also included bodily injury ("BI") coverage of $100,000 per person. (Id.).

According to USAA's "ODOC note," Hugh called USAA a few days after purchasing the policy and spoke to an unidentified

USAA agent. On November 27, 2013, the USAA employee entered a note in USAA's claim software allegedly summarizing the call:

> MBR CALLED RECEIVED AOPOL SAID PREMIUM WAS HIGHER THAN QUOTED—HE THOUGHT PREM WAS 838.37—ADVISED TO GET THE 838.37 PREM HE NEED TO SIGN AND RETURN THE FORMS TO HAVE LOWER UM COVERAGE AND NO-STACKING. ADVISED AS SOON AS WE RECEIVE THE RETURNED FORMS PREM WOULD GO DOWN TO THE 838.37.

(Doc. # 36-2 at 2). In short, the note states that (i) Hugh called and complained that the premium on his policy was higher than he expected, and (ii) the employee informed Hugh that his premium would decrease if he executed and returned a UM selection/rejection form selecting lower UM limits and non-stacked coverage. Subsequently, Hugh filled out a UM coverage selection form on November 27, 2013. (Doc. # 34 at 11).

The form states: "To make a change to your current policy, you must check one of the following boxes." (Id.). This text is followed by a list of options with boxes beside them. (Id.). Despite the instruction to check only one box, Hugh marked two boxes. First, he marked the box stating, "I want the NON-STACKED form of UM Coverage at limits equal to my BI liability limits," which would be $100,000. (Id.). Second, he marked a box stating, "I want the NON-STACKED form

2

of UM Coverage at limits of $10,000 per person, $20,000 per accident, which are lower than my BI Liability limits." (Id.). The dollar amounts in the second box are hand-written. (Id.).

After receiving this form, USAA amended the policy in December 2013 to carry non-stacked UM coverage with $10,000/$20,000 limits and a lower premium than Hugh had originally owed — either $803.48 or $812.21. (Doc. # 1-5 at 3). Each year for the next six years, USAA provided Hugh with his annual policy renewal documentation, which included new UM selection/rejection forms. (Doc. # 36-3). But Hugh never executed and returned to USAA another UM selection/rejection form. (Id.).

In February 2019, Hugh passed away as a result of a car accident. (Doc. # 1 at 4; Doc. # 34 at 9). Arthur Snow ("Snow"), the personal representative of Hugh's Estate, sent USAA a demand for the UM policy limits, which Snow maintains should be $100,000. (Doc. # 1 at 4).

USAA initiated this action on April 19, 2019, seeking a declaratory judgment that Hugh's insurance policy "contains non-stacked uninsured motorist coverage limits of $10,000.00 per person and $20,000.00 per accident." (Doc. # 1 at 6). Snow filed an answer on August 7, 2019 (Doc. # 13), and then an amended answer on March 16, 2020. (Doc. # 33). Each party

3

sought summary judgment in its favor, (Doc. ## 34, 36), but the Court denied both motions. (Doc. # 42).

Now, Snow seeks to exclude two pieces of evidence. (Doc. # 48). USAA has responded (Doc. # 50), and the Motion is ripe for review.

## II. Legal Standard

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." Id. (internal quotation omitted). "A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

"A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." LSQ Funding Grp. v. EDS Field

Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012)(citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine." Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

### III. Analysis

Snow seeks to exclude two pieces of evidence from trial: USAA's "ODOC note" and the affidavit of Matthew Youngsma. (Doc. # 48 at 1). Snow argues that both the ODOC note and Youngsma's affidavit are inadmissible hearsay. (Id. at 2).

#### 1. Youngsma's Affidavit

USAA attached the affidavit of Youngsma to its complaint. (Doc. # 1-3). Youngsma avers that he is a Senior Underwriting Adherence Advisor with USAA. (Id. at 2). In the affidavit, Youngsma states that he has "personal knowledge of the facts attendant to this claim because [he] [has] reviewed all underwriting decisions, the claims file, and insurance application information for Hugh['s] account with USAA, and [he] routinely work[s] with the [UM] selection/rejection form in the course of [his] employment with USAA." (Id.).

Youngsma avers that Hugh called USAA on November 27, 2013, "to discuss his premium of $927.17, which he advised was higher than the $838.37 premium he anticipated" and that an unnamed "USAA employee informed [Hugh] that in order to obtain the lower premium, he would need to sign and return the [UM] rejection/selection form." (Id. at 2-3). According to Youngsma, the ODOC note was "contemporaneously recorded

6

within USAA's online documentation system, which [he] reviewed." (Id. at 3).

Snow seeks to exclude Youngsma's affidavit because it is hearsay and "merely a summary of the ODOC [n]ote," and "does not give [Snow] an opportunity to cross-examine the affiant." (Doc. # 48 at 2, 4). But Snow's Motion fails to expand on these assertions or provide any analysis regarding the affidavit. Nor does the Motion cite any legal authority in support of Snow's argument.

Snow's failure to develop his argument regarding the affidavit warrants denial of the Motion as to the affidavit. See Herbert v. Architect of Capitol, 839 F. Supp. 2d 284, 298 (D.D.C. 2012)("[T]he [defendant] has simply failed to support its argument with any meaningful measure of factual or legal argument. Courts need not consider cursory arguments of this kind, and the Court declines to do so here."); see also Metro. Prop. & Cas. Ins. Co. v. Sarris, No. 115CV0780LEKDJS, 2017 WL 3252812, at *15 (N.D.N.Y. July 28, 2017)("To the extent that Met P&C seeks dismissal of George Sarris's counterclaim for breach of the duty of good faith and fair dealing, . . . the Court need not address that argument because it is completely undeveloped."). However, Snow may raise this objection at trial again, if appropriate.

### 2. ODOC Note

According to Snow, the ODOC note is hearsay because USAA is introducing it as "evidence that Hugh [] wanted to lower his auto insurance premium" and "as evidence of the advice that [USAA] verbally gave Hugh [] (in regards to how he could achieve this goal)." (Id. at 2).

In response, USAA maintains that the ODOC note is not hearsay or, alternatively, satisfies the business records exception to hearsay. (Doc. # 50 at 3).

"'Hearsay' means a statement that . . . the declarant does not make while testifying at the current trial or hearing; and . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The word "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). And the "declarant" is "the person who made the statement." Fed. R. Evid. 801(b).

The Court rejects USAA's argument that it is not introducing the ODOC note to prove the truth of the matter asserted. (Doc. # 50 at 4). USAA argues that it "does not intend to offer the ODOC[] note to prove [Hugh] knowingly and intentionally waived his rights to higher UM benefits."

(Id.). Rather, it is offering the ODOC note "to provide context for the events leading up to [Hugh's] submission of a UM selection/rejection form, and for USAA's half of the telephone conversation." (Id.). According to USAA, "the note shows that a USAA employee received a phone call from [Hugh] regarding his insurance premium; the same day, [Hugh] executed a UM form with coverage alterations that would lower his premium, and two days later, sent USAA the form." (Id.).

But, even if USAA intends to use the ODOC note solely for its clarification of the context and timeline of Hugh's filling out the UM form, USAA is still relying on the truth of the statements made in the ODOC note. At the very least, USAA is relying on the truth of one matter asserted in the note by the USAA employee — that Hugh did in fact call and speak to that USAA employee.

Nevertheless, the Court agrees with USAA that the ODOC note likely satisfies the business records exception to the hearsay rule. Under that exception, "[a]n authenticated document is admissible as a business record if it 'was made at or near the time by — or from information transmitted by — someone with knowledge'; if it 'was kept in the course of a regularly conducted activity'; and if 'making the record was a regular practice of that activity.'" In re Int'l Mgmt.

9

Assocs., LLC, 781 F.3d 1262, 1267 (11th Cir. 2015)(quoting Fed. R. Evid. 803(6)(A)-(C)). "[A]ll these conditions [must be] shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification." Fed. R. Evid. 803(6)(D). If these conditions are met and "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness," the business record is admissible. Fed. R. Evid. 803(6)(E).

"[W]hen deciding whether an exception to the rule against hearsay applies, the court may consider any unprivileged evidence — even hearsay." In re Int'l Mgmt. Assocs., LLC, 781 F.3d at 1268. To satisfy Rule 803(6)(D), "[s]omeone who is knowledgeable about the procedures used to create the alleged business records must testify." Id.; see also United States v. Garnett, 122 F.3d 1016, 1018-19 (11th Cir. 1997)("[Rule] 803(6) requires the testimony of a custodian or other qualified witness who can explain the record-keeping procedure utilized. It is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence and testimony to suggest the trustworthiness of the documents."). But

10

"[t]he testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation." In re Int'l Mgmt. Assocs., LLC, 781 F.3d at 1268.

Snow argues that the ODOC note is untrustworthy because USAA cannot establish that it was made at or near the time Hugh called USAA. (Doc. # 48 at 3). Although the ODOC note includes a date and time — "11/27/13 02:18CST" (Doc. # 36-2 at 1) — it does not state whether that is the actual date of Hugh's call. (Doc. # 48 at 3). In his affidavit, Youngsma averred that the ODOC note was created contemporaneously with the phone call. (Doc. # 1-3 at 3).

Regardless, Hugh was only issued the policy on November 20, 2013, and the ODOC note was made on November 27. Thus, even if the note was made on a different day than the one on which Hugh called, it could only have been made at most six days earlier. Such a short time period does not undermine the trustworthiness of the ODOC note. Compare Carrie Contractors, Inc. v. Blount Const. Grp. of Blount, Inc., 968 F. Supp. 662, 666 (M.D. Ala. 1997)(finding that accounting records made seventeen months after the event at issue were not made "at or near the time of" the event and "therefore do not meet the requirements of Rule 803(6)"). Any uncertainty regarding the

11

exact date on which the note was created does not demonstrate a lack of trustworthiness.

Next, Snow emphasizes that the identity of the USAA employee who created the ODOC note is unknown. (Doc. # 48 at 3-4). Indeed, the ODOC note lists the employee's name as "Name not found." (Doc. # 36-2 at 2). According to Snow, without the name and testimony of the employee who created the ODOC note, it is impossible to determine "if the author of the note was the same person who had the alleged phone conversation with Hugh." (Doc. # 48 at 4). Snow asks, "[h]ow then can we possibly begin to evaluate whether this person 'had knowledge' about the event?" (Id.).

But Snow ignores the case law establishing that the employee who created a particular business record need not testify for the business records exception to apply. See Garnett, 122 F.3d at 1018–19 ("It is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence and testimony to suggest the trustworthiness of the documents."). Additionally, USAA is correct that the business records exception can apply even when the identity of the employee who created the record is unknown. (Doc. # 50 at 7-8); see also United States v. Langford, 647 F.3d 1309, 1327 (11th

12

Cir. 2011)("It is not essential that the offering witness be the recorder or *even be certain of who recorded the item*." (citation omitted)(emphasis added))

Indeed, "[t]o interpret Rule 803(6) as requiring that affiants be permitted to testify only to those bits of information to which they, personally, have borne witness would be to turn Rule 803(6) on its head and would create numerous substantive proof problems, especially for large enterprises." In re Trafford Distrib. Ctr., Inc., 414 B.R. 858, 862 (Bankr. S.D. Fla. 2009). "Allowing evidence from employees who have reviewed business records is what keeps corporate entities from having to track down former employees every time a subpoena is served regarding some menial aspect of their respective prior work; more broadly, review of records is what keeps major national entities from having to locate and produce the employee who personally put a subject bill or document in the mail to a customer." Id.

Here, USAA has presented evidence that the ODOC note is trustworthy despite the absence of an affidavit or testimony from the USAA employee who made the note. Specifically, USAA has provided the affidavit of Youngsma, which is based on his personal knowledge of the record as a USAA Senior Underwriting Adherence Advisor who has reviewed Hugh's account. (Doc. # 1-

13

3). His affidavit is prima facie evidence of the ODOC note's authenticity and trustworthiness. See Lewis v. Residential Mortg. Sols., 800 F. App'x 830, 834 (11th Cir. 2020)("Owens herself is a 'qualified witness' permitted to introduce these documents into evidence. She averred that she was a foreclosure supervisor at BSI and was 'personally familiar with the facts set forth' in her affidavit, along with 'the records of BSI Financial Services with regard to this matter.' This is all the rule requires."). As USAA points out, Snow "has offered no evidence disputing either that the declarant was within the course and scope of employment, or that USAA did not regularly receive information from that employee." (Doc. # 50 at 8).

Furthermore, Youngsma will presumably testify at trial to establish the predicates for the business records exception. See In re Int'l Mgmt. Assocs., LLC, 781 F.3d at 1268 ("Someone who is knowledgeable about the procedures used to create the alleged business records must testify."). So, Snow may cross-examine him then to try to show a lack of trustworthiness for the ODOC note. Based on the evidence before the Court, the business records exception applies to the ODOC note.

To the extent USAA seeks to rely on the truth of the matters asserted in Hugh's statement within the ODOC note, USAA has argued that Hugh's statement is not hearsay under either the statement of an opposing party exception or the then-existing mental condition exception to the hearsay rule. (Doc. # 50 at 5, 8-9); see Williams v. Alpharetta Transfer Station, LLC, No. 1:07-CV-1949-GET-GGB, 2009 WL 10670626, at *6 (N.D. Ga. July 7, 2009)("'Double hearsay' is hearsay included within another hearsay statement. Double hearsay 'is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.'" (citations omitted)), report and recommendation adopted as modified, No. 1:07-CV-1949-GET, 2010 WL 11526841 (N.D. Ga. June 15, 2010), aff'd sub nom. Williams v. Waste Mgmt., Inc., 411 F. App'x 226 (11th Cir. 2011). USAA's arguments appear to have merit. See Fed. R. Evid. 801(d)(2)(A) (providing that an out-of-court statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity"); Fed. R. Evid. 803(3) (providing in relevant part that "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" is an exception to the rule against hearsay).

Thus, the Court will not exclude the ODOC note at this time. See In re Seroquel Prods. Liab. Litig., 2009 WL 260989, at *1 ("A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." (internal quotation omitted)). If appropriate, Snow may raise his objections regarding the ODOC note again at trial.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Arthur Snow's Amended Motion in Limine (Doc. # 48) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 31st day of July, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE