UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

USAA GENERAL INDEMNITY COMPANY,

    Plaintiff,

v.                                                       Case No. 8:19-cv-944-T-33TGW

ARTHUR SNOW,
as Personal Representative
of the Estate of Hugh W. Snow,

    Defendant.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This cause comes before the Court pursuant to a bench trial held on September 11, 2020. The parties filed their proposed findings of fact and conclusions of law on October 1, 2020. (Doc. ## 73, 74). Having considered the evidence and applicable law, the Court grants judgment in favor of Defendant Arthur Snow and against Plaintiff USAA General Indemnity Company.

I.    **Procedural History**

This case centers on an underinsured motorist ("UM") selection rejection form filled out in 2013 by Hugh Snow, who passed away in a car accident in 2019. USAA initiated this action on April 19, 2019, seeking a declaratory judgment that Hugh's insurance policy "contains non-stacked uninsured

1

motorist coverage limits of $10,000.00 per person and $20,000.00 per accident." (Doc. # 1 at 6). Arthur Snow, as representative of the Estate of Hugh Snow, filed an answer on August 7, 2019 (Doc. # 13), and then an amended answer on March 16, 2020. (Doc. # 33). After discovery, each party sought entry of summary judgment in its favor. (Doc. ## 34, 36).

The Court denied both motions. (Doc. # 42). In denying Snow's motion, the Court noted that "Snow ha[d] not cited any case in which an ambiguity created by the insured's filling out a non-ambiguous form was actually interpreted against the insurance company." (Id. at 7-8). Thus, "[i]n the absence of such case law, the Court [was] not convinced **at [that] juncture** that the form should, as a matter of law, be automatically interpreted as requiring the higher UM benefits." (Id. at 8)(emphasis added). Furthermore, because "neither party ha[d] addressed whether any ambiguity is patent or latent," the Court did "not make that determination at [that] juncture." (Id. at 8 n.1). Instead, the Court assumed "for the purposes of the motions for summary judgment only" that "the form — if ambiguous — suffers from a latent ambiguity such that the Court may consider extrinsic evidence." (Id. at 8 n.1). In denying USAA's motion, the Court

held that — assuming parol evidence could be considered — there was a genuine issue of material fact regarding whether Hugh intended to lower his UM policy limits to $10,000. (Id. at 12-13).

The case proceeded to a non-jury trial on September 11, 2020. (Doc. ## 65, 67). The parties have now submitted their proposed findings of fact and conclusions of law. (Doc. ## 73, 74).

## II. Findings of Fact

Hugh Snow purchased automobile insurance from USAA in November 2013. (Doc. # 1-2). The policy included "STACKED" per-person UM coverage of $100,000. (Id. at 2). The policy also included bodily injury ("BI") coverage of $100,000 per person. (Id.).

A few days after purchasing the policy, Hugh called USAA and spoke to an unidentified USAA agent. On November 27, 2013, the USAA agent entered a note in USAA's claim software summarizing the call:

> MBR CALLED RECEIVED AOPOL SAID PREMIUM WAS HIGHER THAN QUOTED — HE THOUGHT PREM WAS 838.37 — ADVISED TO GET THE 838.37 PREM HE NEED TO SIGN AND RETURN THE FORMS TO HAVE LOWER UM COVERAGE AND NO-STACKING. ADVISED AS SOON AS WE RECEIVE THE RETURNED FORMS PREM WOULD GO DOWN TO THE 838.37.

3

(Doc. # 36-2 at 2). That is, Hugh complained that the premium on the policy was higher than he expected, and the agent informed Hugh that his premium would decrease if he executed and returned a UM selection/rejection form selecting lower UM limits and non-stacked coverage.

Subsequently, Hugh filled out a UM coverage selection form on November 27, 2013. (Doc. # 1-4). The form states: "To make a change to your current policy, you must check one of the following boxes." (Id.). This text is followed by a list of options with boxes beside them. (Id.). Despite the instruction to check only one box, Hugh clearly marked two boxes. First, he marked the box stating, "I want the NON-STACKED form of UM Coverage at limits equal to my BI liability limits," which would be $100,000. (Id.). Second, he marked a box stating, "I want the NON-STACKED form of UM Coverage at limits of $10,000 per person, $20,000 per accident, which are lower than my BI Liability limits." (Id.). The dollar amounts in the second box are hand-written. (Id.).

After receiving this form, USAA amended the policy in December 2013 to carry non-stacked UM coverage with $10,000/$20,000 limits and a lower premium than Hugh had originally owed — either $803.48 or $812.21. (Doc. # 1-5 at 3). Each year for the next six years, USAA provided Hugh with

4

his annual policy renewal documentation, which included new UM selection/rejection forms. (Doc. # 36-3). But Hugh never executed and returned to USAA another UM selection/rejection form. (Id.). USAA renewed the policy annually six times through November 20, 2019 with the same $10,000/$20,000 UM limits that were first issued in the revised December 10, 2013 policy. (Id.).

In February 2019, Hugh passed away as a result of a car accident. (Doc. # 1 at 4; Doc. # 33 at 2). Hugh's Estate, of which Snow is the personal representative, sent USAA a demand for the UM policy limits, which he maintains should be $100,000. (Doc. # 1 at 4; Doc. # 33 at 2).

### III. Conclusions of Law

Florida Statute § 627.727 "requires that all motor vehicle liability insurance policies that provide bodily liability coverage include uninsured motorist coverage." State Farm Mutual Automobile Insurance Co. v. Parrish, 873 So. 2d 547, 549 (Fla. 5th DCA 2004). "Under [S]ection 627.727(1), the amount of UM coverage is equal to the amount of bodily injury liability purchased by an insured, unless the insured rejects UM coverage or selects lower limits of UM coverage." Id. (citation omitted). "An insured may reject such coverage in writing, and the insured's written rejection

5

constitutes a prima facie showing that uninsured motorist coverage does not apply." Id.

Regarding the selection or rejection of UM coverage, Section 627.727(1) states:

> **The rejection or selection of lower limits shall be made on a form approved by the office.** The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." **If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.**

Fla. Stat. § 627.727(1)(emphasis added).

This case ultimately turns on two questions of law: (1) whether the UM selection/rejection form as filled out by Hugh, which is part of the insurance policy, is ambiguous and (2) whether any ambiguity is patent or latent under Florida law.

The Court answers the first question in the affirmative.[1] "An agreement is ambiguous if as a whole or by its terms and

---

[1] USAA argues that this Court already held as a matter of law that the form was not ambiguous. (Doc. # 73 at 4-5). This is incorrect. Indeed, the Court explained to USAA at the September 11 bench trial that its summary judgment order did

6

conditions it can reasonably be interpreted in more than one way." Nationstar Mortg. Co. v. Levine, 216 So. 3d 711, 715 (Fla. 4th DCA 2017). The form, as filled out by Hugh, is ambiguous because it can be interpreted as selecting two different amounts of UM coverage. Indeed, it is unclear on the form's face what UM coverage option Hugh was choosing. Although the form told Hugh to check only one box, he checked two conflicting boxes that cannot be reconciled: (1) one checked box specifies that the UM policy limit remains $100,000 but with non-stacked coverage, and (2) the other box (and the handwritten "$10,000/$20,000" next to that box) reduces the UM policy limit to $10,000 per person/$20,000 per accident with non-stacked coverage. See Amerisure Mut. Ins. Co. v. Commercial Pool Cleaners, Inc., No. 8:18-cv-2878-T-24AAS, 2019 WL 6492831, at *3 (M.D. Fla. Dec. 3, 2019)(finding that a UM selection/rejection form was ambiguous because the insured "selected two mutually exclusive options regarding

---

not determine whether the form, as filled out by Hugh, was ambiguous. (Doc. # 67 at 50-51). Regardless, even if the Court had ruled at the summary judgment stage as USAA claims, the Court would still be free to reconsider its ruling now as final judgment has not yet been entered. See Vintilla v. United States, 931 F.2d 1444, 1447 (11th Cir. 1991)("'[A] court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court.' Consequently, 'law of the case applies only where there has been a final judgment.'" (citations omitted)).

7

the amount of UM coverage being sought"), reconsideration denied, No. 8:18-cv-2878-T-24AAS, 2020 WL 3250192 (M.D. Fla. Apr. 2, 2020).

There are two types of ambiguities under Florida law: patent and latent. "A latent ambiguity . . . arises 'where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.'" Phila. Indem. Ins. Co. v. Stazac Mgmt., Inc., No. 3:16-cv-369-J-34MCR, 2018 WL 2445816, at *8 (M.D. Fla. May 31, 2018)(quoting Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So. 2d 657, 659 (Fla. 2d DCA 2005)). "A patent ambiguity, however, exists only where 'a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to ordinary rules of construction.'" Asphalt Paving Sys., Inc. v. S. States Pavement Markings, Inc., No. 3:18-cv-255-J-34JBT, 2019 WL 3816699, at *7 (M.D. Fla. Aug. 14, 2019)(quoting Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998)); see also MDS (Canada) Inc. v. Rad Source Techs., Inc., 720 F.3d 833, 844 (11th Cir. 2013)("A patent ambiguity arises from defective, obscure, or insensible language, and Florida law does not permit the

8

introduction of extrinsic evidence to discern the parties' intentions."), certified question answered, 143 So. 3d 881 (Fla. 2014).

"Importantly, the interpretation of an insurance policy with a latent ambiguity requires the court to consider parol evidence . . . . A patent ambiguity, on the other hand, is one that 'appears on the face of the document and may not be resolved by the consideration of parol evidence.'" Phila. Indem. Ins. Co., 2018 WL 2445816, at *8-9 (citations omitted). "[T]he proper interpretation of a policy with a patent ambiguity is a question of law to be resolved by the Court . . . . In doing so, the Court must liberally interpret the policy in favor of the insured." Id. at *9.

Here, the ambiguity is patent because it is apparent from the face of the form. As explained above, the ambiguity arises solely from the fact that Hugh marked two mutually exclusive options on the form – one for $100,000 in UM benefits, the other for $10,000 in UM benefits. There is thus no "extrinsic fact or extraneous evidence" that "creates a necessity for interpretation or a choice among two or more possible meanings," as is required to find a latent ambiguity. Phila. Indem. Ins. Co., 2018 WL 2445816, at *8 (quoting Mac-Gray Servs., Inc., 915 So. 2d at 659).

9

Because the ambiguity is patent, the Court may not consider parol evidence.[2] See Amerisure Mut. Ins. Co., 2019 WL 6492831, at *3-7 ("Upon review, the Court agrees with Defendant that there is a patent ambiguity on the face of the insurance application, because [the insured] Rinberger selected two mutually exclusive options regarding the amount of UM coverage being sought. . . . The Court agrees that it

---

[2] USAA argues that this Court definitively held at summary judgment that parol evidence should be considered to determine Hugh's intent in filling out the UM selection/rejection form and, thus, has rejected the Amerisure opinion in its entirety. (Doc. # 73 at 7-9). This is inaccurate. At summary judgment, the Court assumed that any ambiguity in the form was latent, and held that failure to comply with Florida Statute § 627.727(1) did not preclude USAA from presenting parol evidence to resolve any latent ambiguity. (Doc. # 42 at 8 n.1, 10-11). In short, the Court merely held that the failure to obtain Section 627.727's conclusive presumption is not a barrier to presenting parol evidence to analyze a UM selection/rejection form **if** that form suffers from a **latent** ambiguity. Thus, the Court did disagree with the Amerisure court's conclusion that the failure to satisfy Section 627.727's conclusive presumption precludes the introduction of parol evidence in all circumstances.

But this Court completely agrees with the Amerisure court's conclusion that a UM selection/rejection form selecting two conflicting coverage options is patently ambiguous and that, under Florida law, parol evidence cannot be considered to resolve patent ambiguities. The Florida District Court of Appeal opinions cited by USAA (Doc. # 73 at 7, 9) do not support an opposite result because none of those opinions addressed ambiguous UM selection/rejection forms, let alone the distinction between patent and latent ambiguities. Indeed, USAA has presented no case in which a court considered parol evidence to resolve a patent ambiguity.

should not consider extrinsic evidence to explain Rinberger's selections on the insurance application."). Thus, the Court will not consider most of the evidence presented at trial, including the witness testimony and the note memorializing Hugh's November 2013 phone call to USAA.[3]

Because the form is patently ambiguous as to the UM policy limits Hugh was selecting, Hugh never made a valid election of lower UM benefits. Therefore, the UM benefits provided for in the original policy ($100,000) still apply. See Amerisure Mut. Ins. Co., 2019 WL 6492831, at *7 n.9 ("The Court is not saying that because there is a patent ambiguity arising from the way that Rinberger filled out the insurance application, the insurance application should just simply be construed in favor of greater coverage. Instead, the Court is saying that because there is a patent ambiguity in the insurance application, the Court cannot find that Rinberger

---

[3]   The parties debate whether the subsequent policy declarations and renewal notices sent to Hugh in later years qualify as part of the policy itself and thus may be considered in analyzing the patent ambiguity. (Doc. # 73 at 8-9; Doc. # 74 at 11). USAA's argument that these subsequent documents are not parol evidence and should be considered to determine the meaning of the UM selection/rejection form is unsupported by any citation to authority and is unconvincing. Regardless, even if these documents are part of the policy and not parol evidence, the Court would nonetheless conclude that the form filled out by Hugh suffers from a patent ambiguity.

11

clearly selected any specific level of UM coverage. Therefore, because he did not make a valid written rejection/election, § 627.727 dictates that [the insured]'s policy should have been issued with UM coverage equal to the bodily injury limits."). "While this result may appear unfair or harsh, [USAA] was in the best position to prevent this problem." Id. at *8. Indeed, when it received Hugh's patently ambiguous form, USAA "could have had [Hugh] fill out the form again in the proper manner," but it did not. Id.

In short, the Court concludes that the policy carried $100,000 per person in UM coverage, and judgment shall be entered in favor of Snow.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

The Clerk is directed to enter judgment in favor of Defendant Arthur Snow and against Plaintiff USAA General Indemnity Company. Thereafter, the Clerk is directed to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of October, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE